Leon **BARNES**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

George **CHILDRESS**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

Nos. 17914, 17915.

United States Court of Appeals
Eighth Circuit.

June 30, 1965.

Peter Anson, of Faegre & Benson, Minneapolis, Minn., for Barnes and Childress.

Hartley Nordin, Asst. U. S. Atty., Minneapolis, Minn., Miles W. Lord, U. S. Atty., Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT, BLACK-MUN and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendants Barnes and Childress were jointly indicted, tried and convicted by a jury upon a charge of assault on a person in lawful custody of mail with intent to rob mail, made in violation of 18 U.S.C.A. § 2114. Each defendant was sentenced to eight years imprisonment.

The defendants have taken and prosecuted separate timely appeals from the final judgment of conviction. Since the appeals present many common questions of law and fact, we shall deal with both appeals in this opinion.

Both defendants urge the following points as a basis for reversal:

I. The court erred in failing to caution the jury against placing undue weight on the testimony of accomplices.

II. The court erred in refusing to order the prosecutor to disclose the identity of its principal witnesses.

III. The court erred in refusing defendants separate trials.

Defendant Childress alone raises the additional point that there was undue delay in the trial of his case and that his motion for dismissal based upon such ground should have been sustained.

No issue is here raised as to the sufficiency of the evidence to sustain the conviction. A careful examination of the record completely satisfies us that ample evidence was offered to sustain the jury's verdicts of conviction. A detailed discussion of the evidence is not required to dispose of the issues here presented.

It is established beyond question that at about 5:45 p. m. on December 20, 1963, a pouch of registered mail containing $1215 in cash was stolen from a mail truck parked behind a postal substation in Minneapolis, Minnesota. Bucksa, an authorized employee, had taken the pouch from the substation and placed it on the seat of his truck. As Bucksa approached the truck, he saw two men coming down the alley toward him but he attached no importance to this. As he stepped out of his truck, he was confronted by a man who pointed a gun at him and ordered him to run and then repeated such order. Bucksa complied and immediately called the police. The robbers removed the mail pouch from the truck. The alley was brightly lighted. The assailant with the gun was within two feet of Bucksa. Bucksa got a good look at him and subsequently positively identified defendant Barnes, with whom he had no prior acquaintance, as the man who had pointed a gun at him. Bucksa testified that the second man on the job stood about fifteen feet distant. He could not positively identify him. At the trial Bucksa testified that the second man was about five feet seven or eight inches tall and weighed about 150 pounds. He stated, "He [Childress] compares to the man I saw in the back of the station as being that man."

Barnes offered alibi testimony and took the witness stand and denied any part in the robbery. Childress did not testify but he offered an alibi witness.

Joseph Buckhalten and Mrs. Jefferson, who were not married to each other but living together, each testified that Barnes and Childress appeared at their apartment with the mail pouch shortly after the robbery. The pouch was cut open, the $1215 in currency was extracted and this money was divided three ways, Barnes and Childress each taking one-third and Buckhalten and Mrs. Jefferson dividing the other third. Virginia Glenn, a prostitute living at the same apartment, testified she saw defendants at the Buckhalten apartment early that evening. A controversy exists as to whether each of the parties dividing the loot gave Miss Glenn $5. There is no evidence that Miss Glenn had any connection with the robbery.

Claudette Sanders testified that she knew the defendants and saw them leave together from 922 Girard Avenue in Minneapolis about 5 p. m. on the day of the robbery.

I.

Defendants' first contention is that the court committed prejudicial error in failing to instruct the jury not to give undue weight to the testimony of accomplices. The court did not give the jury an accomplice instruction. Defendants, while pointing out that the law is otherwise in some states, concede that in federal courts, "A conviction can properly rest on the uncorroborated testimony of an accomplice if it is not otherwise incredible or unsubstantial on its face * *."

Williams v. United States, 8 Cir., 328 F.2d 256, 259. We have also held, citing supporting Supreme Court authorities, that it is a better practice to caution juries against placing too much reliance upon testimony of accomplices. In Lett v. United States, 8 Cir., 15 F.2d 686, 689, we said:

"Ordinarily the failure of a court to charge that the testimony of an accomplice should be received with great caution is not assignable as error, in the absence of a request so to charge. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas. 1917B, 1168; Holmgren v. United States, 217 U.S. 509, 524, 30 S.Ct. 588, 54 L.Ed. 861, 19 Ann.Cas. 778; Perez v. United States (C.C.A.9) 10 F.(2d) 352."

In situations where an improperly worded accomplice instruction has been requested, we have held that it is not reversible error to refuse to give an accomplice instruction. Bass v. United States, 8 Cir., 324 F.2d 168, 172; Stoneking v. United States, 8 Cir., 232 F.2d 385, 391–392.

■ The short answer to the asserted error is that the defendants requested no accomplice instruction and made no exception to the instructions given. Thus defendants are not in a position to urge an error not raised in the trial court.

■ Defendants insist the court should note plain error under F.R. Crim.P. 52(b). Defendants have not met the burden of establishing plain error which results in a miscarriage of justice. See Page v. United States, 8 Cir., 282 F.2d 807, 810. A basis exists for urging that Buckhalten and Mrs. Jefferson were accomplices of the defendants. However, there is substantial evidence corroborating their testimony. Bucksa, who is in no respect an accomplice, positively identified Barnes as an assailant. Bucksa's identity of Childress is less specific but he did say that Childress fit the description of the second robber. Mrs.

Sanders testified she saw the two defendants leave together from a Minneapolis address shortly before 5 p. m. on the day of the robbery. Miss Glenn corroborated the testimony of Buckhalten and Mrs. Jefferson that the defendants appeared at the Buckhalten apartment shortly after the robbery. Defendant Barnes as a witness testified he first met Childress in jail after the arrests on the present charge. Several police officers and other witnesses testified that they had seen the two defendants together on a number of prior occasions.

The existence of such substantial corroborating testimony greatly lessens the likelihood that any prejudice might result from failure to give the accomplice instruction. See Stoneking v. United States, supra; United States v. George, 6 Cir., 319 F.2d 77, 80; United States v. Cianchetti, 2 Cir., 315 F.2d 584, 592. Here, as in the George case just cited, defendants' counsel had full opportunity to and in fact did develop the theories of the defense in argument to the jury.

■ Defendants additionally argue that the court in effect instructed the jury to disregard the accomplice status of Buckhalten and Mrs. Jefferson. We do not so construe the instructions. Defendants point to several isolated extracts from the instructions advising the jury not to be influenced by whether other persons may have been interested in the robbery unless it has a bearing upon the guilt or innocence of the defendants. Such instruction in all probability was prompted by testimony and argument that Buckhalten or Mrs. Jefferson or both were the chief planners and instigators of the robbery and that they were not being prosecuted. The fact that others might have planned the robbery would be no defense to defendants if the jury determined that the defendants were the persons who carried out the robbery charged.

The court specifically told the jury that if anyone else other than defendants committed the robbery, defendants should be found not guilty. The jury was told that it was their function to

determine who was telling the truth. Proper tests were given to aid the jury in determining the credibility of witnesses. No objection was made to the portions of the instructions here pertinent. We examined the instructions as a whole and hold that they fairly submit the issue of defendants' guilt to the jury.

## II.

Defendants' contention that the court erred in refusing to require the Government to inform defendants of the identity of its chief witnesses and the substance of its case lacks merit. Defendants' requests for further information were generally granted except with respect to the disclosure of the identity of witnesses. Defendants were advised by the indictment that Bucksa was the guard attacked and hence knew that he would be an important witness.

18 U.S.C.A. § 3432 requires the Government to furnish a defendant charged with a capital offense the names and addresses of witnesses to be used. Such statute by its express terms applies only with respect to capital offenses. The offense here charged is not a capital offense.

In Dean v. United States, 8 Cir., 265 F.2d 544, 547, we held:

"There is no provision or requirement that in a non-capital case the government must furnish the defendant with the names of witnesses to be called in behalf of the prosecution. § 3432, Title 18 U.S.C.A. provides for the furnishing of a list of the witnesses in capital cases only."

To like effect, see Bohn v. United States, 8 Cir., 260 F.2d 773, 778; Cordova v. United States, 10 Cir., 303 F.2d 454, 455.

█ Defendants do not contend that any statute or rule gives them a right to the disclosure of the names of witnesses but urge that the right is one guaranteed by the Constitution. Defendants do not point to the constitutional provision upon which they rely. We find nothing in the Constitution expressly or impliedly granting defendants the absolute right to the names of Government witnesses under all circumstances.

█ It is quite possible that cases may arise where a court in the proper exercise of its discretion should order the Government to disclose the names of its witnesses. Here the Government, in response to defendants' request, advised the court that when defendant Childress came to Minneapolis in response to the arrest warrant and while free on bond he was accompanied by three or four others each of whom had guns and that the lives of the Government witnesses would be in jeopardy if the identities of the witnesses were disclosed. Such statement was not challenged. The court stated, "Well, under those circumstances I will sustain the Government's objection."

█ Moreover, if a defendant is unfairly surprised by any Government testimony, the right exists to move for a continuance upon proper showing of need for time to meet the testimony. Defendants were granted a short continuance to produce an alibi witness. No further request for a continuance was made.[1]

The Government has fully complied with 18 U.S.C.A. § 3500(a) by producing statements of witnesses made to Government agents. Such statements were furnished defendants' counsel during the trial in advance of the time the witnesses were called to testify.

Defendants have failed to establish that the court abused its discretion in

---

1. Defendants' counsel were given access to some Government files and exhibits on October 23, 1964, more than a week before the trial. While examining such documents, defendants' counsel saw names placed on folder tabs in the Government file and at least made a notation of some of the names. The Government claimed that defendants were thereby provided with the names of its witnesses. There is a dispute generated by affidavits and counter-affidavits filed with this court with respect to how much information with respect to witnesses was obtained. We find it unnecessary to resolve the dispute presented by the conflicting affidavits.

denying defendants' request to require the Government to disclose the names of its witnesses.

### III.

■ Defendants next urge that the court erred in denying them separate trials. The defendants were properly indicted jointly as it is alleged they participated in the same wrongful acts. See F.R.Crim.P. 8(b). Federal R.Crim. P. 14 provides for relief from prejudicial joinder. Separate trials are not a matter of right. In Fisher v. United States, 8 Cir., 324 F.2d 775, 781, we said, "It is well settled that the trial court has a wide range of discretion in the matter of granting separate trials, and that it must be affirmatively shown that prejudice resulted from the failure to grant a separate trial." No abuse of discretion is here shown.

Defendant Barnes made a motion for severance. The record fails to disclose any proper motion for severance made by Childress. Childress' counsel made an oral motion for severance which the court refused to accept. The court advised counsel to file a written motion if he desired to pursue the matter. No such motion was filed, except insofar as the motion for an immediate trial discussed in the next division hereof, involving a severance. In connection with arranging for a hearing upon Barnes' severance motion, the following colloquy occurred:

> "The Court: Mr. Starr, if you want to be present, good and well. I don't know whether you have made such a motion.
>
> Mr. Starr: We never made a motion for severance, your Honor. We did make demand for immediate trial."

■ Absent a request for severance, defendant Childress is in no position to complain about the court's refusal to grant separate trials.

Barnes, in his severance motion, urged prejudice in a joint trial upon the following grounds: (1) Childress has a longer criminal record. (2) Childress might not testify and this could prejudice

Barnes. (3) Barnes' defense would be different; presumably meaning that his alibi testimony would be different from that of Childress.

■ Barnes as a witness at the trial denied prior acquaintance with Childress. This brought on substantial rebuttal evidence showing prior acquaintance. Barnes by his testimony created this situation. The defendants have failed to demonstrate that the court abused its discretion in denying a severance.

### IV.

Lastly, we reach the issue raised only by the defendant Childress to the effect that the case should have been dismissed as to him on the basis of undue delay in prosecuting him. Childress states that he was prejudiced by the delay because his chief defense was alibi and the memory of alibi witnesses fades with time.

■ The test for determining the violation of the Constitutional right to a speedy trial is whether under all the circumstances the delay was unreasonable. Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393; Mack v. United States, 8 Cir., 326 F.2d 481, 486; Wood v. United States, 10 Cir., 317 F.2d 736, 740; Mattoon v. Rhay, 9 Cir., 313 F.2d 683, 685; Frankel v. Woodrough, 8 Cir., 7 F.2d 796, 797.

"A delay which is not 'purposeful or oppressive' is not violative of the constitutional right of a defendant to a speedy trial." Davidson v. United States, 8 Cir., 312 F.2d 163, 167.

The crime here charged was committed on December 20, 1963. Defendants were indicted on May 7, 1964. Childress was arrested in Kansas City, Missouri, on May 15, 1964. Initially, Childress was released on bail. He was surrendered by his surety on June 8, 1964. Counsel was appointed for him on June 9, 1964. Various motions were filed by counsel. Defendant was arraigned and entered a plea of not guilty on July 14, 1964. At that time, defendant requested trial on July 27. He was advised by the court that the jury work for the term had been completed and

that no jury was available and that the case could not be reached until the next term of court which commenced in September. Subsequently, the case was set for trial on October 6, 1964. By reason of a conflicting engagement on the part of Barnes' court-appointed counsel, the case was continued. It was thereafter set for trial on October 21. On October 19 the court heard and denied Childress' motion to dismiss based on prejudicial and unnecessary delay. On October 20, Childress sought to have the court-appointed attorney removed and stated that he thought he could raise funds from relatives to employ counsel. At the suggestion of the court, Childress conferred further with his appointed counsel and reached an agreement for such counsel to continue to represent him. On October 23, 1964, Barnes discharged his court-appointed counsel and employed an attorney to represent him. Such attorney requested a brief continuance to enable him to prepare his defense. Childress insisted on a severance and an immediate trial. Severance was denied. The trial was set for November 2, 1964, and commenced on that date. The Government was prepared to try defendants at all times during the September term but insisted on a joint trial.

The record satisfies us that the court and the Government were doing all that could be done to grant the defendants a speedy trial. There was no purposeful or prejudicial delay in the trial. The defendants were tried at the first term following the indictment. The court committed no error in denying Childress' motion to dismiss based upon delay.

The court wishes to express its appreciation to Peter Anson and Stephen E. Lee for accepting court appointment as attorneys for the defendants and for their excellent briefs and oral argument made upon behalf of the defendants.

A full consideration of all points urged by the defendants in the light of a careful study of the record satisfies us that the defendants' asserted errors all lack merit and that the defendants have had in all respects a fair trial.

The judgments of conviction are affirmed.