**Robert Garrett CALDWELL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 23035.**

United States Court of Appeals Ninth Circuit.

Jan. 15, 1969.

Rehearing Denied Feb. 14, 1969.

Francis Sarguis (argued), Santa Barbara, Cal., for appellant.

Richard V. Boulger (argued), Asst. U. S. Atty., John P. Hyland, U. S. Atty., Fresno, Cal., for appellee.

Before HAMLEY, HAMLIN and HUFSTEDLER, Circuit Judges.

HAMLIN, Circuit Judge.

Robert Garrett Caldwell, appellant herein, was convicted after a jury trial in the United States District Court for the Eastern District of California of a violation of 18 U.S.C. § 2113(c) (possession of stolen money with knowledge that it was stolen).[1] He filed a timely appeal to this court, which has jurisdiction under 28 U.S.C. § 1291 et seq.

Appellant urges two grounds for the reversal of his conviction: (1) The facts presented to the jury are insufficient as a matter of law to support a guilty verdict; and (2) It was reversible error for the court not to instruct the jury on the character of testimony given by accomplices. We find no merit in either of these contentions, and we therefore affirm appellant's conviction.

In determining whether there are sufficient facts to justify the verdict of guilty, such verdict must be sustained if there is substantial evidence taken in the view most favorable to the government to support it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Viewed in this light, we shall set out the main facts shown in the testimony.

One Jeffrey Goodloe and Jimmie Dean Garrett, a brother of the appellant, were participants in the robbery of the Security National Bank on March 14, 1968. Goodloe gave the money which had been taken from the bank, $1,260.00, to Garrett, and Garrett went to the home of a friend of his, Gloria Jean Davis. With Gloria at the time was her sister-in-law, Berniece Davis. Garrett showed them a lot of money, told them that he had been questioned in connection with a bank robbery, but had been released. There was quite a bit of money, some of which had a band around it. Berniece saw $20 bills with bands around them. While Garrett was there with the two girls, Beverly Harris, who lived nearby, came in. Beverly and Garrett then left and went over to Beverly's house. Later, Gloria and Berniece went to Beverly's house, and while all were there the FBI came in and arrested Garrett. After he was gone Beverly was asked by Berniece whether the money was in her house. Beverly replied that Garrett had hid it

---

1. 18 U.S.C. § 2113
    (b) Whoever takes and carries away, with intent to steal * * * any property or money * * * belonging to * * * any bank * * * shall be fined * * * or imprisoned * * * or both;
    (c) Whoever receives, possesses, con-

ceals, * * * any property or money * * * knowing the same to have been taken from a bank * * * in violation of subsection (b) of this section shall be subject to the punishment provided by said subsection (b) for the taker.

somewhere, but that she did not know where it was. The three girls searched for the money, but they were unable to find it. A few moments later Garrett's sister called and said the money was hidden in a shoe in Beverly's closet. Gloria found the money wrapped in a bread wrapper. However, none of the women wanted the money in her apartment, and after some discussion Gloria tossed the package of money into the bushes outside the apartment. Later that afternoon appellant came to Gloria's house, where Berniece was also present. Appellant asked them whether they knew where the money was and if they had it. They replied that they did not, and told him that the money was hidden outside. The appellant said that Garrett had sent him over there after the money because he wanted his cut. The record further shows that appellant told the women to give him the money because if the police came out there and found it in one of the houses, the women would go to jail. With that, Gloria and Berniece showed him where the money had been dropped, and the appellant went outside and picked it up. He stated, "I found it," shoved it in his pocket, and left.

■ We are unable to say that the evidence is insufficient to support the judgment of conviction. It is true that there were some inconsistencies in the testimony of Gloria Jean and Berniece, the two principal witnesses for the prosecution. For example, Berniece testified that Gloria wrapped the money in newspaper before throwing it in the bushes; Gloria testified that the money remained covered only in a bread wrapper. Also, Gloria testified that when the appellant arrived at her apartment, he asked for a "package," while Berniece stated that he asked for the "money." However, these were minor inconsistencies in otherwise uniform testimony. The jury could conclude that appellant knew that the package contained stolen money from all the circumstances, including the statement by appellant to the women that they would be arrested if the police found them with the package.

■ Appellant's second contention that it was error for the court not to instruct the jury on the character of testimony given by accomplices is equally without merit. No such instruction was requested by appellant, nor was any objection made by appellant to the failure of the court to give such an instruction, as required by Rule 30 of the Federal Rules of Criminal Procedure. Under these circumstances the appellant must show that the trial judge's failure to give the instruction on his own constituted "plain error." Federal Rules of Criminal Procedure Rule 52(b).

■ The well settled rule is that a trial judge's failure to give an accomplice instruction on his own in an ordinary case does not constitute plain error. Barnes v. United States, 347 F.2d 925 (8th Cir. 1965); Strangway v. United States, 312 F.2d 283 (9th Cir. 1963); Mims v. United States, 254 F.2d 654 (9th Cir. 1958).

■ These cases are especially pertinent where, as here, it is by no means clear that the women were accomplices in the crime charged against appellant. The women in this case, when they told appellant where the package was, were working more under the threat of police discovery than in cooperation with appellant. Even if the failure to give a cautionary instruction could be considered plain error were the women admitted accomplices, it would not appear to be plain error under the circumstances of this case.

Appellant relies on Williamson v. United States, 332 F.2d 123 (5th Cir. 1964), where it was stated to be plain error not to give a cautionary accomplice instruction. Williamson, however, as stated therein, was "that exceptional case in which an error not preserved must yet be noticed * * *." The government's case there was made entirely by the accomplice. As the court stated, "if his testimony is disregarded, there

is simply no case." The court there pointed out at great length the weakness of the testimony of the accomplice, the many glaring inconsistencies therein, the testimony that the accomplice on the eve of trial offered to produce certain documents for the defense if he were paid $5,000.00, and the fact that the court's instructions as to other matters did not give sufficient guidance to the jury. Thus the special facts that existed in *Williamson* do not exist here. We see no reason to depart from the general rule that failure by a judge to give a cautionary accomplice instruction on his own motion does not constitute reversible error.

Judgment affirmed.