**UNITED STATES of America,
Appellee,**

v.

**Earl Thomas COLE, Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Mitchell Calvin McHENRY, Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Samuel WOODARD, Jr. (a/k/a Joe
Siefus), Appellant.**

**Nos. 20697, 71–1026 and 71–1036.**

United States Court of Appeals,
Eighth Circuit.

Oct. 5, 1971.

---

Kenneth K. Simon, Kansas City, Mo., for Earl Thomas Cole.

Hubert L. Rowlands, Kansas City, Mo., for Mitchell Calvin McHenry.

William C. Hopkins, II, Kansas City, Mo., for Samuel Woodard, Jr.

Bert C. Hurn, U. S. Atty., Anthony P. Nugent, Jr., Asst. U. S. Atty., for appellee.

Before LAY, HEANEY and BRIGHT, Circuit Judges.

LAY, Circuit Judge.

This is an appeal by three defendants, Edward Thomas Cole, Mitchell C. McHenry and Samuel Woodard, Jr., from convictions of aiding and abetting others in the robbery of the Community State Bank of Kansas City, Missouri. The defendants raise several contentions of error, none of which we find to be meritorious. We affirm the judgments of conviction.

The bank robbery took place on July 3, 1970. It was carried out by two armed robbers who were later identified as Sam Bailey Stewart, age 17, and Robert Lee Miser, age 20. After their capture both Stewart and Miser pled guilty. Their testimony at this trial directly implicated all three defendants as aiding and abetting the commission of the robbery. The accomplices testified that on the morning of the robbery they met with the defendants and planned the crime. According to Stewart, after that meeting he, Cole and Woodard stole a white Ford Galaxie to be used in the robbery and at 2:00 p. m. on the same day, he, Miser and McHenry drove this auto to the rear of the Community State Bank. McHenry remained in the car while Stewart and Miser entered the bank and demanded the money at gun point. The stolen money was placed in a pillowcase and returned to the waiting auto. According to the accomplices, defendant Cole had stationed himself in a switch car along the escape route and defendant Woodard drove another auto to a location where it could be used to block the path of any pursuing police. A last minute change in the escape route, however, made use of these autos impossible. After the robbery the accomplices went with McHenry to an

apartment on Paseo Street and were later joined by defendants Cole and Woodard. The stolen funds were divided in this apartment.

The defendant McHenry was identified as the driver of the get-away car by a bank teller who was working at a drive-in window the day of the robbery. He was also identified by a policeman and a cabdriver who were outside the bank when the get-away car drove off. Another witness, Doris Samuels, a resident of the Paseo Street apartments, testified that she saw both McHenry and Cole in the company of the two accomplices at the apartment house after 2:00 p. m. on the day of the robbery. A second tenant, Loree Bowman, testified that she saw Stewart and defendant McHenry arrive with a third man at the Paseo Street apartments. She saw the three enter Doris Samuels' apartment and after their arrival she found a pillowcase of money in Miss Samuels' refrigerator. Later she observed defendants Woodard and Cole along with a third unidentified male enter the apartments and join the other men.

## SUFFICIENCY OF EVIDENCE

 All of the defendants assert that the evidence was insufficient to support the guilty verdict. We disagree. It is true there exist contradictions within the testimony of the various government witnesses relating to the events that transpired on the day of the robbery. However, these circumstances are not a basis on which the judgments of conviction may be set aside. The credibility of the government's case is for the jury to resolve. See United States v. May, 419 F.2d 553 (8 Cir. 1970).

 It is a settled principle of law that a conviction may rest on even the uncorroborated testimony of an accomplice if that testimony is not otherwise unsubstantial on its face. As stated in Williams v. United States, 328 F.2d 256, 259 (8 Cir. 1964):

"An accomplice is, of course, not disqualified as a witness in federal criminal trials. Nor is his testimony by rule of law of such unsubstantiality or such infirmity on interest or character as to be insufficient as a basis to convict without corroboration. A conviction can properly rest on the uncorroborated testimony of an accomplice if it is not otherwise incredible or unsubstantial on its face

\* \* \*."

See also Harris v. Ciccone, 417 F.2d 479 (8 Cir. 1969); Kirschbaum v. United States, 407 F.2d 562, 565 (8 Cir. 1969); Patterson v. United States, 361 F.2d 632, 634 (8 Cir.1966). The testimony of Stewart and Miser cannot be discounted as insubstantial. Furthermore, in the present case the record provides ample corroboration by other witnesses. Additionally, the trial court instructed the jury that the accomplices' testimony should "be received with caution and weighed with great care." Tillery v. United States, 411 F.2d 644, 647–648 (5 Cir. 1969); Davis v. United States, 411 F.2d 1126, 1128–1130 (5 Cir. 1969); United States v. Becker, 62 F.2d 1007 (2 Cir. 1933). Under the circumstances we find no deficiency in the substantive or procedural regularity surrounding the proof as to the guilt of the three defendants.

## DISCOVERY

Defendants claim they were denied due process of law by the trial court's denial of their pretrial motion to discover (1) the names and addresses of all persons who had knowledge pertinent to the case, (2) the grand jury testimony of all witnesses and (3) all exculpatory information in the government's possession.

In the instant case the government did not reveal prior to trial the names of all of the persons who allegedly were in the presence of the defendants on the day of the robbery. The record verifies that the government's refusal to disclose the names of these persons resulted from its concern for the safety of prospective witnesses.

■ In a noncapital case an accused has no constitutional right to require the production of the names and addresses of possible witnesses. Drews v. Minnesota, 407 F.2d 1307 (8 Cir. 1969); Barnes v. United States, 347 F. 2d 925, 929 (8 Cir. 1965). Although it has been recognized that in a proper case, disclosure of prosecution's witnesses may be ordered, this circuit has uniformly held that such matters are within the discretion of the trial court. United States v. Harflinger, 436 F.2d 928, 936 (8 Cir. 1970); Barnes v. United States, supra, 347 F.2d at 929. And, as here, where alleged threats and intimidation of prospective witnesses has been disclosed, it is not an abuse of that discretion to limit discovery. United States v. Briddle, 443 F.2d 443 (8 Cir. 1971). In refusing to disclose the names of all of its witnesses the government represented no exculpatory information was suppressed. The defendants assert identity of the witnesses was vitally necessary to adequately prepare their defense. The record indicates that government witnesses had reported threats to the F.B.I. These conflicting claims must be weighed in view of all the attendant circumstances. Although no fixed rule may govern all cases, we are satisfied on the present record that there has been no prejudicial error in denying the defendants' request.

■ Prior to trial the defendants Woodard and Cole made a motion requesting production of the transcript of testimony of all persons who testified before the Grand Jury. The government argued that there was no demonstration of any "particularized need" for the production of these transcripts. The trial court ruled that the transcripts were to be made available only *after* a witness has testified. This ruling is in accord with the rule well established in this circuit. See National Dairy Products Corp. v. United States, 384 F.2d 457 (8 Cir. 1967); Hanger v. United States, 398 F.2d 91 (8 Cir. 1968); United States v. Davis, 410 F.2d 959 (8 Cir. 1969). Considering the facts presented in the light of the principles enunciated in the *National Dairy* and *Hanger* cases, we find no error here.

■ Defendants' last claim on restricted discovery relates to the alleged suppression of certain exculpatory information. The defendants rely on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The complaint here is that defendants were not informed of the government's evidence *prior* to the trial. The basic contention is that the defendants were not provided with certain evidence in advance which would have aided the defense in attacking the credibility of government witnesses. The disclosure at trial, they contend, comes too late to effectively investigate and utilize in the examination of the witnesses. Such an argument overlooks that the *Brady* case dealt with disclosure *at* trial and not prior to it. Cf. United States v. Cobb, 271 F.Supp. 159, 163 (S.D.N.Y.1967). See Carter, Suppression Of Evidence Favorable To An Accused, 34 F.R.D. 87, 88. We note that at the close of the government's evidence, the court advised defendants' counsel, outside of the presence of the jury, of its willingness to subpoena *any* witness the defendants wanted to be called on their behalf. A claim is now made that several other persons were allegedly in the presence of the defendants, before and after the robbery, on the day of the robbery. These persons were identified in the direct and cross examination of the government's witnesses. If the defendants in any way surmised that the testimony of these witnesses would have in any way aided the defendants, they could have been subpoenaed by the defense. No motion for continuance was made in order to obtain time for defendants' counsel to interview any of these persons. We find no error here.

## RESTRICTION OF CROSS EXAMINATION

■ During the cross examination of the witness Stewart, the defense tried to

show that prior to Stewart's guilty plea he attempted to escape from jail by feigning suicide. The trial judge ruled the evidence was not relevant. Defendants claim that their right of confrontation was unduly restricted. While it is true that the testimony of an admitted accomplice provides a critical link between the alleged offense and the defendant, and that a defendant is entitled to a wide latitude in cross examination (cf. United States v. Dickens, 417 F.2d 958 (8 Cir. 1969)), it does not follow that every restriction results in prejudicial error.

■ The trial court has broad discretion as to matters of materiality and relevancy. Cotton v. United States, 361 F.2d 673, 676 (8 Cir. 1966); Frohmann v. United States, 380 F.2d 832 (8 Cir. 1967), cert. denied, 389 U.S. 976, 88 S. Ct. 478, 19 L.Ed.2d 469; Clark v. United States, 211 F.2d 100, 105 (8 Cir. 1954), cert. denied, 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714 (1955). The exercise of this discretion in limiting cross examination will not be reversed unless there has been clear abuse of discretion and a showing of prejudice to the defendants. United States v. Bensinger Co., 430 F.2d 584 (8 Cir. 1970). Defendant's counsel was invited by the trial judge to further explore the relevancy of the testimony sought. He chose not to do so. There exists nothing relevant in the proposed inquiry which might suggest whether the defendant committed the offense or not. Cf. Blitz v. United States, 153 U.S. 308, 312, 14 S.Ct. 924, 38 L.Ed. 725 (1894). And, as to the defendant's claim that if the witness had denied the attempt the denial could be contradicted thereby impugning his credibility, the Fourth Circuit in Sutherland v. United States, 92 F.2d 305, 308 (4 Cir. 1937), has stated:

"[N]othing is better settled than that a witness, whether a party or not, may not be asked questions as to irrelevant matters on cross-examination for the purpose of contradicting and thus discrediting him."

See also United States v. Chase, 372 F. 2d 453, 463 (4 Cir. 1967).

## IMPROPER "LINEUP"

Defendant McHenry attacks his in court identification by Ruth Bowman as tainted by a "one man show up" which occurred at the preliminary hearing.

Ruth Bowman was the teller at a drive-in window of the Community State Bank. At the time of the robbery she saw a white Ford Galaxie pass by her window and "glanced" at the driver of the vehicle. She testified that she wrote down the license number of the car. She noticed the driver was a Negro and "very thin." She did not participate in any police lineups. The preliminary hearing was the first occasion at which she was called on to make an identification.

At the time of trial, the district court held a hearing out of the presence of the jury to determine whether the witness' identification was in any way based on illegal procedure. The defendant claimed that at the preliminary hearing he was the only Negro *seated with this counsel* in front of the rail in the courtroom. Mrs. Bowman stated she did not know that the preliminary hearing was called for McHenry. However, she admitted she saw McHenry and his counsel called forward and knew he was being accused of the crime. During the preliminary hearing she was asked whether anyone in the courtroom resembled the driver. She pointed out McHenry.

The trial court ruled that Mrs. Bowman's in court testimony "can well be based on her observations that she made at the time of the bank robbery, and there is as yet no suggestion she is basing it on anything that occurred in the hearing * * *." She was allowed thereafter to testify. She was asked whether she saw the driver in the courtroom and in response stated, "I see one that resembles him very much." She pointed out McHenry.

Defendant relies on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967); Gilbert v. Califor-

nia, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The fundamental principle of *Wade* et al., is that some phophylaxis is necessary at police lineups to assure a fair identification procedure. Here McHenry was represented by counsel throughout the preliminary hearing. The record fails to demonstrate any complaint made by defendant's counsel at the time of the preliminary hearing. Counsel for the defense had ample opportunity to attack Mrs. Bowman's foundation to make identification at trial. At trial counsel pursued such an examination.[1] Defendant relies on the language of Stovall v. Denno, supra:

"The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it * * *." 388 U.S. at 302, 87 S.Ct. at 1972.

See also Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). Thus, defendant's main thrust here is that the preliminary hearing resembles the one man show-up and violates due process. Cf. Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968).

Each case stands on its own footing. There exists no per se rule excluding a witness' identification made while counsel is present.[2] The trial court may weigh all the attendant circumstances of the challenged identification. Consideration can be given to counsel's opportunity to inquire into circumstances of the challenged identification which existed at the time of the preliminary hearing. Of greater significance is whether the trial court is persuaded that the witness' identification at time of trial rests solely on the suggestive "show-up" or is based on independent origin. Although a police lineup might have obviated the objection made here, nevertheless the essential issue here, as in *Stovall*,[3] is whether the confrontation procedure was so impermissively suggestive as to give rise to a very substantial likelihood of irreparably mistaken identification. The trial court found no suggestive illegality. We find no basis on the present record to hold that this finding is incorrect.

We have reviewed the remaining claims raised by defendants and find no prejudicial error. This observation applies particularly to the alleged prejudicial misstatement by the prosecutor, as well as to the defendants' contention of double jeopardy. The claim of

---

1. Mrs. Bowman's testimony both at the preliminary hearing and trial was that she merely "glanced" at the driver since she was more interested in getting the license number. She did not make a positive identification of the driver at the preliminary hearing or at trial but stated in response to the question at trial, "I see one that resembles him (the driver) very much." In the hearing out of the jury's presence she was asked and answered:

"Did you say that he might have resembled Mr. McHenry?

"A. Yes, I said he was a resemblance, yes, sir.

"Q. But you did not really identify him at that time?

"A. No, sir."

Tr.R. 47

2. Even when there exists a *Wade* violation and counsel is absent, if the identification testimony is completely independent of the lineup, there exists no reversible error. United States v. Ranciglio, 429 F.2d 228 (8 Cir. 1970), cert. denied, 400 U.S. 959, 91 S.Ct. 358, 27 L.Ed.2d 268.

3. Although one-to-one "lineups" are not to be condoned, 388 U.S. at 302, it should be noted the confrontation of Stovall by the witness identifying him was effected by bringing Stovall to the witness' hospital bed. The Supreme Court noted the exigency of the situation involved and approved the trial court's finding that the in court identification was not irreparably tainted by the procedure followed.

double jeopardy by reason of the government's election at the conclusion of the trial to abandon the conspiracy charge and submit only the charge of aiding and abetting is wholly without merit.[4] Collateral estoppel, as defined in Ashe v. Swenson, 397 U.S. 436, 442, 90 S.Ct. 1189, 1193, 25 L.Ed.2d 469 (1970), "bars relitigation between the same parties of issues actually *determined* at a *previous trial * * *.*" (Emphasis ours.)

Defendant McHenry also asserts error in the disparity of sentence. There exists no basis for review here. See Smith v. United States, 356 F.2d 868 (8 Cir. 1966), cert. denied, 385 U.S. 820, 87 S.Ct. 44, 17 L.Ed.2d 58.[5]

Judgments affirmed.

4. Furthermore, the substantive crime of conspiracy and that of aiding and abetting are separate offenses. United States v. Tierney, 424 F.2d 643 (9 Cir. 1970), cert. denied, 400 U.S. 850, 91 S.Ct. 53, 27 L.Ed. 2d 87. See discussion Developments in the Law of Criminal Conspiracy, 72 Harv.L. Rev. 920, 969–74 (1969). Thus, an acquittal for conspiracy "does not preclude conviction for aiding and abetting unless the acquittal results in a finding of fact in favor of the defendant which is essential to the substantive offense." 424 F.2d at 645.

5. Defendant McHenry complains that his sentence of fifteen years is excessive and disparate to the similar sentence received by accomplice Stewart. McHenry asserts that his lack of a prior arrest record and his lesser degree of implication in the robbery warrants a lighter sentence than that imposed on Stewart. McHenry was convicted as a principal and his acts of planning, soliciting and participating in the crime do not indicate that he played a minor role in its commission.

McHenry has presented no evidence to support his claims that this sentence was imposed as a sanction for his refusal to plead guilty and his insistence on a jury trial.