**UNITED STATES of America,
Appellee,**

v.

**James G. BARNES, Appellant.**

**No. 73–1227.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1973.

Decided Nov. 2, 1973.

Daniel P. Reardon, St. Louis, Mo., for appellant.

Richard Coffin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and ROSS, Circuit Judges.

LAY, Circuit Judge.

James G. Barnes was convicted on two counts of violating 21 U.S.C. § 841(a)(1) for knowingly and intentionally distributing heroin; he likewise was convicted on two separate counts of

violating 21 U.S.C. § 844(a) for knowingly and intentionally possessing heroin and marijuana. He was sentenced to ten years imprisonment and a three year special parole term on each of the distribution counts, said sentences to run concurrently, and a one year concurrent sentence on the possession counts.

On appeal defendant raises a single ground of error. He contends that the government was obligated to produce a paid government informant who allegedly participated with the defendant in the criminal conduct charged under Counts I and II.

The prosecution did not call the informant to the stand. The government's case was submitted through the testimony of three detectives of the St. Louis police department. Their testimony reflected that on the morning of August 29, 1972, Charles Bullock, the informant, came to the Office for Drug Abuse Law Enforcement in St. Louis where he was "strip-searched" and, finding nothing, he was then given $120 in prerecorded government funds. Bullock was then followed and was observed getting into a truck driven by the accomplice, Bannister Robertson.[1] Later, while the detectives still had the truck under surveillance, the defendant Barnes was observed approaching the truck, going into a house and receiving money from Robertson. Barnes was then observed giving Bullock a brown envelope. The detectives were located at distances of 60 to 150 feet away. Bullock was observed driving away and was followed until he was picked up by Detective Stolte, whereupon he gave the small brown envelope to the police officer. A subsequent search of his person revealed nothing more. The powder contained in the envelope was tested and shown to contain a net weight of .8 grams of heroin.

On September 8, 1972, a similar transaction took place. This time Barnes was observed giving Bullock three tinfoil packets, the contents of which later proved to be 1.1 grams net weight of heroin. The informant was not involved in the possession counts which took place on November 27, 1972, when the defendant was arrested at his home.

On December 29, 1972, the defendant moved under Rule 16 of the Federal Rules of Criminal Procedure for discovery and inspection of all incriminating and exculpatory evidence and the names of witnesses within the government's control. At the same time the defendant moved for production of witnesses for interview prior to trial, alleging *inter alia*: "The *present whereabouts* of said witnesses are *unknown* to defendant, and defendant believes that the Government knows or by reasonable inquiry could determine their places of confinement and could, without difficulty, make them available for interview by the defendant." (Our emphasis.) These motions were denied by the trial judge on February 8, 1973. Trial commenced on February 12, 1973.

The general rule concerning discovery of witnesses applicable in this circuit was set forth in United States v. Cole, 449 F.2d 194, 198 (8th Cir. 1971), cert. denied, 405 U.S. 931, 92 S.Ct. 987, 30 L. Ed.2d 806 (1972), wherein we said:

> "In a noncapital case an accused has no constitutional right to require the production of the names and addresses of possible witnesses. Drews v. Minnesota, 407 F.2d 1307 (8 Cir. 1969); Barnes v. United States, 347 F.2d 925, 929 (8 Cir. 1965). Although it has

---

1. Robertson was originally named a co-defendant with Barnes. On December 11, 1972, he pled guilty to the two counts of distribution of heroin. At the time of trial he was in the custody of the United States pending sentencing. He allegedly testified against the defendant before the grand jury. He was not called as a witness by either the government or the defendant. Although the defendant urges he did not know Robertson's exact whereabouts, knowledge of his custody was generally known and the defendant made no request for a writ of habeas corpus ad testificandum for his production at trial. Cf. Johnson v. United States, 291 F.2d 150 (8th Cir.), cert. denied, 368 U.S. 880, 82 S. Ct. 130, 7 L.Ed.2d 80 (1961).

been recognized that in a proper case, disclosure of prosecution's witnesses may be ordered, this circuit has uniformly held that such matters are within the discretion of the trial court. United States v. Harflinger, 436 F.2d 928, 936 (8 Cir. 1970); Barnes v. United States, supra, 347 F.2d at 929. And, as here, where alleged threats and intimidation of prospective witnesses has been disclosed, it is not an abuse of that discretion to limit discovery. United States v. Briddle, 443 F.2d 443 (8 Cir. 1971)."

■ However, since Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), it is clear that the general rule of nondisclosure of witnesses is not always applicable to the informant. As the Supreme Court stated in *Roviaro*:

"The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. *Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.* In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." (Our emphasis.) *Id.* at 60–61, 77 S.Ct. at 627–628.

■ However, even where an informant is involved, the government's disclosure of his name and whereabouts must necessarily turn on the facts and circumstances involved. Again, as the Supreme Court has recognized:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." [2] *Id.* at 62, 77 S.Ct. at 628.

■ Certainly one of the most relevant factors to be weighed by the court is whether or not the evidence is *material* to the accused's defense or a fair determination of the cause.[3]

■ We think it clear from the cases decided since *Roviaro* that where the

---

2. These factors are discussed more fully in 8 Wigmore, Evidence § 2374(f) (McNaughton rev. 1961). See also United States v. Turchick, 451 F.2d 333 (8th Cir. 1971).

3. In cases involving the "tipster" type of informant, who merely conveys information to the government but neither witnesses nor participates in the offense, courts generally hold that disclosure is not material and therefore not required. See, e. g., United States v. Willis, 473 F.2d 450 (6th Cir. 1973); United States v. Alvarez, 472 F.2d 111 (9th Cir. 1973); United States v. Picard, 464 F.2d 215 (1st Cir. 1972); United States ex rel. Abbott v. Twomey, 460 F.2d 400 (7th Cir. 1972); United States v. Kel-

ly, 449 F.2d 329 (9th Cir. 1971); United States v. Anthony, 444 F.2d 484 (9th Cir. 1971), cert. denied, 406 U.S. 959, 92 S.Ct. 2069, 32 L.Ed.2d 346 (1972); Churder v. United States, 387 F.2d 825 (8th Cir. 1968); Williams v. United States, 273 F.2d 781 (9th Cir. 1959), cert. denied, 362 U.S. 951, 80 S. Ct. 862, 4 L.Ed.2d 868 (1960); Miller v. United States, 273 F.2d 279 (5th Cir. 1959), cert. denied, 362 U.S. 928, 80 S.Ct. 756, 4 L.Ed.2d 747 (1960); Anderson v. United States, 106 U.S.App.D.C. 340, 273 F.2d 75, cert. denied, 361 U.S. 844, 80 S.Ct. 95, 4 L. Ed.2d 81 (1959); Pegram v. United States, 267 F.2d 781 (6th Cir. 1959); United States v. One 1957 Ford Ranchero Pickup Truck, 265 F.2d 21 (10th Cir. 1959).

witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense. Cf. Roviaro v. United States, 353 U.S. 53, 65 n. 15, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

In Gilmore v. United States, 256 F.2d 565 (5th Cir. 1958), the informant was a witness to the transaction. The court also found that the informant had "set the stage" for the transaction in that he had acted as an intermediary between the defendant and the federal narcotics agent who purchased the drugs. The court held that this situation met the *Roviaro* test:

> "As Anonymous was a principal actor before and during this performance, who he was and what he knew was certainly material and relevant. In this testimony there might have been the seeds of innocence, of substantial doubt, or overwhelming corroboration. As the inferences from it covered the full spectrum from innocence to guilt, the process of truthfinding, which should be the aim of every trial, compelled its disclosure." *Gilmore,* supra at 567.

In United States v. Roberts, 388 F.2d 646 (2d Cir. 1968), the informant was a witness to the alleged sale of narcotics. The court held that the government should have been required to disclose the informant's whereabouts, so that the defendant could interview the informant as a potential witness.[4] See also United States v. Barnett, 418 F.2d 309 (6th Cir. 1969).

However, in many instances where the government failed to disclose the witness prior to trial, subsequent events may well correct any possible prejudice. Thus, where the witness is not disclosed but is produced at trial and the defendant is given ample opportunity for cross-examination no prejudice results. See Smith v. United States, 273 F.2d 462 (10th Cir. 1959), cert. denied,

363 U.S. 846, 80 S.Ct. 1619, 4 L.Ed.2d 1729 (1960). In some instances no prejudice results if the informant's identity was either known by the defendant or else disclosed through the testimony of other witnesses. See, e. g., Churder v. United States, 387 F.2d 825 (8th Cir. 1968); Smith v. United States, 273 F.2d 462 (10th Cir. 1959), cert. denied, 363 U.S. 846, 80 S.Ct. 1619, 4 L.Ed.2d 1729 (1960); Sorrentino v. United States, 163 F.2d 627 (9th Cir. 1947). Cf. United States v. Emory, 468 F.2d 1017 (8th Cir. 1972); Alverez v. United States, 282 F.2d 435 (9th Cir. 1960).

In some cases, where disclosure might have otherwise been appropriate, the courts have held that the accused waived his right to disclosure. For example, in United States v. Cansler, 419 F.2d 952 (7th Cir. 1969), cert. denied, 397 U.S. 1029, 90 S.Ct. 1278, 25 L.Ed.2d 540 (1970), one of the factors relied upon by the court to refuse disclosure was that defendant had never demanded production of the informant prior to trial. See also United States v. Smart, 448 F.2d 931 (2d Cir. 1971), cert. denied, 405 U.S. 998, 92 S.Ct 1269, 31 L.Ed.2d 467 (1972); United States v. Roberts, 401 F.2d 538 (2d Cir.), cert. denied, 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 469 (1968); Firo v. United States, 340 F.2d 597 (5th Cir. 1965); United States v. Coke, 339 F.2d 183 (2d Cir. 1964).

The government contends that it is not obligated to produce the informant for interview prior to trial. It argues that the Sixth Amendment right of confrontation does not involve pretrial disclosure, citing United States ex rel. Meadows v. New York, 426 F.2d 1176 (2d Cir. 1970), cert. denied, 401 U.S. 941, 91 S.Ct. 944, 28 L.Ed.2d 222 (1971). Although we agree with the latter contention, under the facts presented here, where the informant is shown to be a material witness and the government does not plan to use the informant as a witness [5] it owes a duty to

_____

4. The Second Circuit remanded the case for a hearing on the factual question of whether defendant's counsel had made a sufficient request for the informant's whereabouts.

5. The government is, of course, not required to use the informant as a witness. For this reason, United States v. Williams, 481 F.2d 735 (8th Cir. 1973); United States v. Mar-

make every reasonable effort to have the informant made available to the defendant to interview or use as a witness, if desired. See United States v. Kitchen, 480 F.2d 1222 (8th Cir. 1973); United States v. Pollard, 479 F.2d 310 (8th Cir. 1973); United States v. Hayes, 477 F.2d 868 (10th Cir. 1973). As stated in Velarde-Villarreal v. United States, 354 F.2d 9, 13 (9th Cir. 1965):

"We think we have here a special case in which the Government should be required to demonstrate its inability through reasonable efforts to produce Margarito. It appears that Margarito is frequently used by the Government, for one customs agent indicated that Margarito has occasion from time to time to contact the agent. If Margarito is available for hire, he should be available to come and testify. One wonders whether the agent might have made such an arrangement during one of those 'contacts'. We think whether there was a failure to expend every reasonable effort to obtain the witness is a question of fact for the trial judge.

"The practice of the Government in employing agent-informers in narcotics cases is well known. We also know that such agents are usually not trained officers—often they are themselves addicts or former addicts. The Government must know that an eager informer is exposed to temptations to produce as many accuseds as possible at the risk of trapping not merely an unwary criminal but sometimes an unwary innocent as well. One could hardly expect such informants always to stay on the proper side of the line which separates those two cases. *And since the Government chooses to utilize such agents, with the attendant risk of entrapment, it is fair to require the Government which uses this inherently dangerous procedure to take appropriate precautions to insure that no innocent man should be punished.*" [6]  (Our emphasis.)

■■ Turning to the facts here, we feel the government owed a duty to disclose Bullock's name and address prior to trial. Under the present facts, since the government failed to make the proper disclosure, the government was obligated to have at least made a reasonable effort to locate him prior to trial for interview by the defendant and use as a possible witness. We think a new trial, however, does not automatically follow. Possible prejudice is not enough. Rather than reverse the conviction, at the present time we remand for an evidentiary hearing, with defendant and counsel present, for examination of the informant; Bullock. Cf. United States v. Hurse, 453 F.2d 128 (8th Cir. 1971). The government has the burden to demonstrate that it has not deliberately concealed any exculpatory information possessed by him. This is a factual determination to be made by the trial court.

tin, 482 F.2d 202 (8th Cir. 1973), and United States v. Mosby, 422 F.2d 72 (8th Cir.), cert. denied, 399 U.S. 914, 90 S.Ct. 2217, 26 L.Ed.2d 571 (1970), are all distinguishable. In each of those cases, the defendant contended that the government should have been required to put the informant on the stand. As was said in *Mosby*:

"Absent unusual circumstances such as knowingly concealing evidence favorable to a defendant, the Government has a wide discretion with respect to the witnesses to be called to prove its case. The government is not ordinarily compelled to call all witnesses competent to testify including special agents or informers." *Mosby,* supra at 74.

6. As Judge Waterman observed in dissent in United States v. Cimino, 321 F.2d 509, 514 (2d Cir. 1963):

"Seldom can government informers be expected to be pillars of stability in their communities. If the common understanding is to be credited they are often narcotic addicts or petty criminals whose cooperation with law enforcement officials is not entirely voluntary. Under these circumstances, to give defendants the name (perhaps, as here, one of several aliases) of the Government's informer, without revealing the further information about the informer which the Government may be expected to possess, and without aiding defense counsel to find the potential witness, would only further expose the sharp disadvantages which a defendant often faces in preparing his defense to a criminal prosecution."

The district court should likewise make a factual determination as to whether prejudice arose from the failure of the government to make him available to the defendant. The sole question is whether defendant was denied a fair trial. In the event the informant possesses evidence which in any way impeaches the credibility of the government's case or would have been helpful as a defense to the charge, the trial court should view the same, in light of the testimony existing, to determine if any prejudice arose. Upon such hearing and finding the cause shall be certified with the complete record to this court.

Judgment of conviction on the possession charges, Counts III and IV, is affirmed; our ruling on Counts I and II will be held in abeyance pending an evidentiary hearing and findings by the district court to be certified to this court.