UNITED STATES of America, Plaintiff,

v.

Gary D. APKER, et al., Defendants.

No. CR 90–0–127.

United States District Court,
D. Nebraska.

Aug. 16, 1991.

David Stickman and Martin J. Kushner, Omaha, Neb., for Gary D. Apker.

Kirk E. Naylor, Jr., Lincoln, Neb., for Timothy S. Egan.

David Richter, Council Bluffs, Iowa, for Dale Ray Haley.

Alan P. Caplan, San Francisco, Cal., for Lamont D. Kress.

George Babcock, Omaha, Neb., for Cheryl H. Morford.

Barbara Flick, Omaha, Neb., for Sandra A. Volkir.

Rebecca J. Schmitt, Omaha, Neb., for Mary Lee.

Stuart J. Dornan, Omaha, Neb., for Lovella Mauseth.

Michael Levy, Omaha, Neb., for Rodney S. Rumsey.

Alan G. Stoler, Omaha, Neb., for Kenneth D. Lucht.

Deborah Cunningham, Omaha, Neb., for Roger Wright.

Stephen L. Von Riesen, Asst. U.S. Atty., Omaha, Neb., for U.S.

## MEMORANDUM OPINION AND ORDER

CAMBRIDGE, District Judge.

This matter is before the court on the defendants' appeal (Filing No. 536)[1] and the government's appeal (Filing No. 537) of the magistrate judge's memorandum and order (Filing No. 501).

## I. FACTUAL BACKGROUND

This case involves a lengthy investigation of the so-called "Omaha Chapter of the Hell's Angels" and the alleged involvement of that group in a large-scale drug conspiracy. The investigation resulted in a multicount indictment alleging a conspiracy to distribute methamphetamine and various crimes allegedly committed in furtherance of the conspiracy. Confidential informants provided the government with a substantial part of the probable cause necessary to pursue its investigation.

The defendants filed motions seeking the identity of certain confidential informants named in a state wiretap application and affidavit and of certain confidential informants named in a federal oral interception application and affidavit. All of the confidential informants are afraid that, if their identities are revealed, they or their families might be harmed. Each informant was promised confidentiality.

First, the magistrate judge determined that with one possible exception, there has not been a sufficient showing that the informants, as a group or individually, possess significant knowledge about the case to require disclosure. As to that one exception, "CI-1" knows that " 'Apker and the Hell's Angels have a hierarchy of distributors in the Omaha area that are involved with them in the distribution of methamphetamine' " (Filing No. 501, at 19). The magistrate judge determined that if CI-1 knows who constitutes the hierarchy, such information would be material, particularly if certain defendants were not known to be members. The magistrate therefore determined that he should examine CI-1, utilizing the procedure set forth in *United States v. Grisham*, 748 F.2d 460, 464-65 n. 2 (8th Cir.1984). The question to be determined in the *Grisham* hearing would be: "Does CI-1 know the names of all the members of the hierarchy of distributors used by Gary Apker and the Hell's Angels and, if so, what are their names"?

Second, the magistrate judge determined, contrary to the defendants' argument, that there was no reasonable suggestion that any of the law enforcement officers lied about the existence of the informants or made up informant information.

---

1. Although the defendants' paper is captioned "objections to magistrate's findings and recommendations" filed on July 15, 1991, a reading of the paper makes it clear that the defendants are in fact filing an appeal of the magistrate's memorandum and order (Filing No. 501) pursuant to Local Rule of Practice 49(A).

## II. DEPENDANTS' APPEAL

Local Rule of Practice 49(A) provides that a statement of appeal "shall specifically designate the order or part thereof appealed from *and the basis for any objection thereto.*" Local Rule of Practice 49(A) (emphasis added). In the case of the defendants' appeal, the defendants have simply listed, with page number references, quotations from the magistrate's memorandum and order without stating any bases for objection to the listed quoted portions of the memorandum and order. Despite the defendants' lack of compliance with Local Rule 49(A), the court has, to the extent possible, nevertheless considered the defendants' appeal as an appeal from the entire memorandum and order other than the portion which allows for a *Grisham* hearing with regard to CI–1.

## III. GOVERNMENT'S APPEAL

The government appeals from the portion of the memorandum and order allowing for the *Grisham* hearing regarding CI–1. The government asserts that the defendants have not met their burden of showing materiality required for a *Grisham* hearing, and that CI–1 is unwilling to advance this case or testify due to a fear of bodily harm to self or family.

The government requests the opportunity to present argument and briefs to the court. Such request will be denied.

The government also requests de novo review of this matter. The correct standard of review for this matter is set forth below, and the government's request for de novo review shall be denied.

## IV. STANDARD OF REVIEW

 In an appeal from a magistrate judge's order, the court must set aside any portion found to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Local Rule of Practice 49(A).

## V. DISCUSSION

When deciding whether to disclose the identity of a confidential informant, The United States Supreme Court has stated that the court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 629, 1 L.Ed.2d 639 (1957). The Court further stated that the disclosure decision "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

 The Eighth Circuit Court of Appeals has stated that whether the evidence will be material is a crucial factor to be viewed by the trial court in exercising its discretion as to whether to order disclosure. *United States v. Grisham,* 748 F.2d 460, 463 (8th Cir.1984). Where a defendant understandably has difficulty meeting the burden of showing materiality, the court may hold an *in camera* proceeding to determine the materiality question. *Id.* at 464.

 With regard to all confidential informants with one possible exception, the magistrate judge determined that the information possessed was primarily "tipster" information, the informants are not percipient witnesses, and therefore that the defendants did not meet their burden of showing materiality.

With regard to the one possible exception—CI–1, however, CI–1 might know about "a hierarchy of distributors." The magistrate judge concluded that as CI–1 might have specific knowledge as to who is or is not a member of the "hierarchy," the evidence would likely be material, and therefore a *Grisham* hearing is appropriate.

 The government argues that there has been no showing of materiality. The court disagrees, finding that possible knowledge as to who is or is not a member of the "hierarchy" constitutes material information.

 The government also argues that "the potential harm and intimidation to not only CI–1, but to any other confidential informants utilized for wire or bug applica-

tions in the above entitled case, is too great to subject CI–1 to a *Grisham* hearing" (Filing No. 537).

The court notes the procedure set forth by the Eighth Circuit:

> [T]he trial judge should examine the informant *in camera,* without the presence of government agents or counsel for either party. Without identifying the informant, the trial judge should make a record of his findings on the question of materiality. Because such findings may include information that would lead to identification of the informant, the record should be sealed. The sealed record should be preserved so that it will be available to the appellate court in the event review is sought of the trial judge's order granting or denying the judge's motion to compel disclosure. *The trial judge must be vigilant that inadvertent disclosure of the informant's identity not occur.*

*Id.* (emphasis added). The court notes that this court has in the past held at least one examination of a confidential informant where the procedures outlined in *Grisham* were followed. *United States v. Jennings,* CR 89-0-52 (D.Neb. Apr. 21, 1989). The stringent measures undertaken in such situations should assure the confidentiality of the identity of the informant.

Therefore, the court finds that the appeals of the defendants and the government should be denied and the memorandum and order issued by the magistrate judge should be affirmed.

IT IS ORDERED:

1. The defendants' appeal (Filing No. 536) of the magistrate judge's memorandum and order is denied;

2. The government's appeal (Filing No. 537) of the magistrate judge's memorandum and order is denied;

3. The government's request for the opportunity to argue and submit briefs (Filing No. 537) is denied;

4. The government's request for de novo review (Filing No. 537) is denied; and

5. The order issued by the magistrate judge (Filing No. 501) is affirmed.

## MEMORANDUM AND ORDER

RICHARD G. KOPF, United States Magistrate Judge.

The defendants seek the identity of certain confidential informants (Filings 296, 321, 329, 347, 350, 398, and 415). Extensive evidentiary hearings (see Filing 44, Partial Transcript, in 8:CR91–00030 (related case)) and oral argument have taken place. Extensive briefing has been considered. I shall deny all the motions, with the exception that I shall examine one confidential informant ex parte in camera in accordance with the instructions stated in *United States v. Grisham,* 748 F.2d 460, 464–65 n. 2 (8th Cir.1984). I shall then rule upon whether the government must disclose the identity of the one confidential informant I shall examine in accordance with the *Grisham* instructions.

### I. FACTS

This case involves a lengthy investigation of the so-called "Omaha Chapter of the Hell's Angels" and the alleged involvement of that group in a large-scale drug conspiracy. That investigation ultimately resulted in a multicount indictment which alleged a conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and various substantive crimes alleged to have been committed in furtherance of the conspiracy (Filing 115). The government has used sophisticated investigative techniques, including wiretaps and hidden "bugs", to pierce the supposedly secret veil thrown up around the alleged drug conspiracy. But, notwithstanding the technical wizardry used by the government, human intelligence, in large part in the form of confidential informants, gave the government a substantial part of the probable cause necessary to pursue its investigation.

The defendants seek the identity of the confidential informants named in a state wiretap application and affidavit (Defendants' Exhibit 1 (05–23–91)) and the identity of the confidential informants named in a federal oral ("bug") interception application and affidavit (Defendants' Exhibit 5

(06–26–91)). All of the informants are afraid to testify or otherwise have their identities revealed for fear that they or their families will be harmed (Defendants' Exhibit 1 (05–23–91), at 65 ¶ 71; Exhibit 5 (06–26–91), at 20 ¶ Vc; Partial Transcript (Filing 44 in 8:CR91–00030), at 174:2–21). The informants have a realistic concern. *Id.* Each informant was promised confidentiality. *Id.*

Without question each informant knows something of relative significance about this case as each was used in support of either the state wiretap or the federal oral interception. But, with perhaps only one exception, "no individual CI had comprehensive knowledge of all the details of the conspiracy" and each confidential informant knew only "one piece of the puzzle." Post–Hearing Brief of Rodney S. Rumsey in Support of Motion to Disclose Confidential Informant at 3. The one exception may be "CI–1" who evidently knows that defendant "Apker and the Hell's Angels have a hierarchy of distributors in the Omaha area that are involved with them in the distribution of methamphetamine." (Defendants' Exhibit 1 ¶ 31 at 21–23) (*See also* Partial Transcript (Filing 44 in 8:CR91–00030), at 137:16–25; 138:1–18).

With the exception of erroneous information about the children of one of the defendants which is not material, there is no convincing evidence that any of the affiants or investigators associated with this case knew at the time or believe now that the information supplied by any confidential informant was false. Indeed Deputy Buglewicz, the state law enforcement case agent who drafted the state wiretap application and affidavit, testified that he still believes virtually everything the informants told him or his fellow investigators:

THE COURT: What I want to know is whether you have subsequently learned or now believe that any of the information given to you by a CI and recited in the affidavit and application is untrue.

THE WITNESS: I would have to say to that, no.

THE COURT: Except for the number 2 and the children of the Morfords?

THE WITNESS: Yes. I'm not sure about them to this day, and I know that that source did say that was a son—I believe, and I think there was a reference to a daughter as well.

THE COURT: I want to be—I want this to be real clear, so we don't have a misunderstanding. What you're telling me is today, as you sit here in this witness stand, the only thing that you believe that is untrue that the CIs gave you that's in the affidavit and application upon which Judge Hickman relied has to do with the description of the Morford kids by CI number 2?

THE WITNESS: Yes.

Partial Transcript (Filing 44 in 8:CR91–00030) at 182:25; 183:1–22.

What evidence there is on the subject suggests that law enforcement agents took reasonable steps to assure themselves of the accuracy of the information supplied by the confidential informants. For example Deputy Buglewicz testified that:

CROSS–EXAMINATION

BY MR. VON RIESEN:

Q. Officer Buglewicz, what was your normal procedure after you first were introduced to an informant or met them? What kind of steps and safeguards did you take before you started using their information in current investigations?

MR. RICHTER: I object when the question references "normal procedure". If it is specific to one of these, I would then withdraw my objection.

THE COURT: Overruled. You may answer.

A. Normally, when I would meet an informant, I knew from—from the rules that we worked under that one of the first things we had to do going through State Court was to check whether they were on probation, in penitentiary or work release of an inmate. Once I crossed that hurdle and determined yes or no, that would determine the next steps. Once we had gotten through that, I would begin to, of course, taking information, and as I received the information, I would try, through various means,

to verify it and it's not—beyond that it's not until I'm comfortable that the information they have provided in the past was accurate, but that I would be able to determine if they gave me some information, why they gave it to me and if they were lying about it.

Q. Would you attempt to verify the accuracy of the information?

A. Yes, I would.

Q. When you say "comfortable", do you mean that you would have to feel comfortable that they had been giving you accurate information before you would consider using it in, for example, an affidavit for a search warrant?

A. Yes, very much so.

Q. Did you reach that point with all seven of the informants, numbered informants utilized in the application for electronic surveillance?

A. Yes, I did.

Partial Transcript (Filing 44 in 8:CR91–00030) at 168:8–25; 169:1–25.

The defendants have offered various affidavits (Defendants' Exhibits 3–9 (05–23–91)), evidently attempting to show that certain information compiled by law enforcement and included in the application and affidavit for wire interception (wiretap) was false. From these errors the defendants evidently seek to establish that the information supplied by the confidential informants was either: (a) false and known to be false by law enforcement officials at the time the information was used to obtain the interception orders, or (b) obtained with reckless disregard for the truth.

I have carefully examined these affidavits and I cannot find anything persuasive in the affidavits which supports the claim that the government knew the informant information was false or that it used the information in reckless disregard of the truth. In other words, even if the claim of falsehood in the defense affidavits is accepted as true, there is no clear nexus between the claim of falsehood and the claim that the government knew that the information was false or used the information in reckless disregard of the truth.

Furthermore, I note that many of the affidavits are not based upon personal knowledge. For example two of the affidavits state nothing more than conclusions drawn by a defense lawyer affiant, without disclosing the factual basis for the conclusion (e.g., Defendants' Exhibit 3 (05–23–91), Affidavit of Counsel for Mr. Apker at 5 ¶ 17: "If the confidential source referred to in paragraph 67 was contacted, this confidential source would deny that he or she overheard Gary Apker stating that Gary Apker was the source of the methamphetamine and Kevin Grove's possession at the time of Kevin Grove's arrest";[1] Defendants Exhibit 9 (05–23–91), Affidavit of Counsel for Ms. Morford at 3 ¶ 9: "Gary Apker was never at the Old Brass Shack [during the times stated by a confidential informant]").

I also recognize that much of what the defendants' complain about as false is information that is relatively insignificant in any event. For example, it is claimed that the name of the wife of defendant Apker was omitted from the description of the owner of record of Apker's residence (Defendants' Exhibit 3 (05–23–91), at 4 ¶ 12) or it is claimed that Mrs. Apker's true maiden name is Ladd not Weeks (Defendants' Exhibit 3 (05–23–91), at 4 ¶ 15).[2]

---

1. This affidavit suggests that counsel for Apker knows the identity of the informant. One other affidavit of a defense lawyer specifically states that he knows the identity of confidential informant number 2 and goes so far as to name the informant (Defendants' Exhibit 9 (05–23–91), at ¶ 8). If the defense knows the identity of at least some of the informants, the defense has not shown by evidentiary submission that the defense is unable to locate the informants, or has attempted to contact the named informants to secure an affidavit. The results of this case might be different if the defendants obtained affidavits from the supposed informants which substantially contradicted the information recited by the affiant law enforcement officers. *See* note 9.

2. The use of Mrs. Apker's maiden name had to do with the government's effort to understand the significance of the name of a subscriber to a telephone number (Defendant's Exhibit 1 (05–23–91), at 48 ¶ 44). The government knew the subscriber's name was Weeks and thought the subscriber might be related to Mrs. Apker. If it is true that Mrs. Apker's maiden name was

Still further some of the information provided in an effort to establish falsehood comes from sources who have an obvious bias. For example, affiant Calvin Davenport (Defendants' Exhibit 8 (05–23–91) is thought to be a member of the Hell's Angels (Defendants' Exhibit 1 (05–23–91), at 52 ¶ 54).[3] Affiant Curtis A. Meyer is a business partner of Defendant Rumsey (Defendants' Exhibit 5 (05–23–91) ¶ 2) and thus has reason to fear forfeiture of his investment if his partnership assets were used, as claimed, in this conspiracy. Affiant Tony Aguilar is an employee of defendant Rumsey at the Quality Auto business and the son of Rumsey's wife (Defendant's Exhibit 6(05–23–91) ¶ 1).

Insofar as whether any of the confidential informants are "percipient" witnesses, it should be noted that the government has been required to give a bill of particulars. As a part of the bill of particulars the government is obligated to set forth each "overt act" it will use to prove the conspiracy about which the government complains (Filing 234). In the bill of particulars the government is obligated to state, among other things, the exact dates, the exact locations, and the names of the participants in each alleged offense or "overt act" (Filing 234, at 2 ¶ 2). By the court order granting the motions for a bill of particulars an "overt act" is defined to mean any "overt act" pled in the indictment (including the counts claiming commission of substantive crimes which are incorporated by reference into the conspiracy count), or, even if not pled, any specific receipt or distribution of a controlled substance or use of a weapon which was in fact in furtherance of the conspiracy (Filing 234, at 2 ¶ 2 n. 1). The government has sup-

plied a bill of particulars setting forth various "overt acts" (Filing 268).

Some of the informants did witness what could have been alleged as "overt acts", such "CI–1" observing Apker pick up drug money from a distributor (Defendants' Exhibit 1 (05–23–91), at 21–23 ¶ 31) or "CI–2" observing Apker supplying drugs to the Morfords (Defendants' Exhibit 1 (05–23–91), at 37–38 ¶ 39). While it is not entirely clear, as best I can determine from the evidence, none of the incidents described in any of the applications for electronic surveillance which were witnessed by a confidential informant are included as "overt acts" in the bill of particulars.

The government has stated by the professional representation made in open court, as if under oath, and by the affidavit, of the Assistant United States Attorney handling this case, that, after due and diligent investigation, none of the confidential informants "were present at, witnessed, or participated in any of the overt acts set forth in the Bill of Particulars" (Government's Exhibit 101 (06–26–91). Furthermore, the government states in one of its briefs that "[t]he government will not offer the testimony of any of the confidential informants named in any of the affidavits in support of applications for Electronic Surveillance" (Brief in Opposition to Motion to Disclose the Identity of Confidential Informants (04–29–91), at 6).

## II. LAW

In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court recognized that whether the name of an informant should be disclosed involves "balancing the public interest in protecting the flow of information against the individual's right to prepare his de-

---

Ladd, it is also admitted by Apker that "Julie Weeks, [is] the daughter of Patricia Apker and the step-daughter of Gary D. Apker" (Defendants' Exhibit 3, at 4 ¶ 13). Thus, although the government may have had Mrs. Apker's maiden name wrong, its suspicion that Julie Weeks was somehow related to Mrs. Apker was correct.

**3.** Interestingly, Davenport suggests (Defendants' Exhibit 8 (05–23–91) that he was never at Quality Auto during 1990 or 1991, in opposition to the claim of confidential informant 6 (Defen-

dants' Exhibit 1 (05–23–91), at 52 ¶ 54). But the affidavit of a business partner of defendant Rumsey in the Quality Auto business states that Davenport was in fact a customer of Quality Auto, although the business partner also does not believe that Davenport and defendants Apker and Haley were at the business as claimed by the confidential informant in the month in question (Defendants' Exhibit 5 (05–23–91), at 3 ¶ 13).

fense." *Id.* at 62, 77 S.Ct. at 628–29. The Court indicated that "where the disclosure of an informer's identity ... is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the [governmental] privilege [against disclosure] must give way." *Id.* at 60–61, 77 S.Ct. at 628.

Our circuit court has suggested that the decision to order disclosure is case specific, and requires a court to take into account such things as the possible defenses, the possible significance of the informant's testimony, and "other relevant factors," especially including whether the testimony is "material" to the defendant's defense. *Grisham,* 748 F.2d at 462–63 (holding that a confidential informant's identity should not have been ordered disclosed because the defendant's contention that the informant had "material" information was based upon conjecture). The burden is upon the defendant to show "materiality." *United States v. Parker,* 836 F.2d 1080, 1083 (8th Cir.1987), *cert. denied,* 486 U.S. 1025, 108 S.Ct. 2002, 100 L.Ed.2d 233 (1988) (holding that it was not error to refuse disclosure of a confidential informant where it was claimed the informant was an active participant or eye witness where there was no showing that the informant's testimony was "material"). For this purpose "materiality" means that the evidence which the confidential informant could supply has the likely potential ("a reasonable probability") to change the outcome of the trial. *Id.* (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)). *See United States v. Johnson,* 892 F.2d 707, 709–10 (8th Cir. 1989) (it was not error to refuse to disclose identity of confidential informant who introduced undercover agent to defendant where defendant failed to establish materiality of informant's testimony and where the defendant knew the identity of the informant in any event).

If an informant participated in the crime charged or witnessed the crime charged "disclosure will almost always be material to the accused's defense." *United States v. Barnes,* 486 F.2d 776, 779 (8th Cir.1973) (holding that where the informant witnessed the crime charged or participated in it, and the government did not plan on using the informant as a witness at trial, the failure to disclose the whereabouts of the informant required remand to determine prejudice). The government is not obligated to call an informant as a government witness even if the informant is a witness to or participated in the crime. *Id.* at 779–80 n. 5. But if the government does not call the informant as a government witness, and if the informant witnessed or participated in the crime charged, the government may be required to expend reasonable efforts to locate the informant for the defendant if the informant's testimony would be "material." *Id.* at 779–80.

In some cases criminal defendants will seek to establish "materiality" by showing that the informant provided an important part of a probable-cause showing, such as where a search warrant was issued based upon an affidavit premised upon informant information. But in order to compel such disclosure the defendant must make "a substantial showing that false statements were intentionally or recklessly included in the government's ... affidavits" or the defendant must "satisfactorily explain ... his failure to make such a showing." *United States v. O'Connell,* 841 F.2d 1408, 1418 n. 6 (8th Cir.), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988) (citing *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978); *United States v. Garcia,* 785 F.2d 214, 222 (8th Cir.), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986)). This is so because the judge issuing the warrant " 'is concerned, not with whether the informant lied, but with whether the affiant is truthful in his recitation of what he was told.' " *McCray v. Illinois,* 386 U.S. 300, 307, 87 S.Ct. 1056, 1060, 18 L.Ed.2d 62 (1967) (quoting *State v. Burnett,* 42 N.J. 377, 385–88, 201 A.2d 39, 43–45 (1964)). Thus disclosure should not be required unless there is a fairly significant showing that the affiant may be guilty of perjury in the recitation of what he/she was told by the informant, such as where the police conduct appears inexplicable if

an informant actually reported what it is claimed the informant said, or when the testifying officer has on other occasions proved to be lacking in credibility. 1 W. LaFave, *Search and Seizure*, § 3.3(g) at 704–05 (1987) (citations and footnotes omitted).

Because it is often difficult for a defendant to establish the "materiality" of an informant's testimony since the defendant will seldom know precisely what the informant knows, a trial court may, apparently in its discretion, order an *in camera ex parte* examination of the informant. *Grisham*, 748 F.2d at 464–65 & n. 2. The informant is examined outside the presence of both counsel for the government and the defendant. The court, being careful not to identify the informant, makes sealed findings, which are later available to an appeals court if review is necessary either because disclosure was not warranted or because, after ordering disclosure, the government refused and the indictment was dismissed.[4]

With these factors in mind, I shall turn to the specific issues raised by the defense motions.

## A. "Percipient Witnesses"

The defendants first argue that the government should disclose the identity of the informants because the informants know a good deal about the crimes charged. Essentially, the defendants contend that the informants are "percipient witnesses."[5]

With one possible exception, I disagree. I disagree because there has not been a sufficient showing that the informants, as a group or individually, possess a fund of knowledge about critical elements of this case so significant as to require disclosure as "percipient witnesses."

It is helpful to keep in mind the facts of *Roviaro*, 353 U.S. at 62–64, 77 S.Ct. at 628–30, the case upon which the defendants' motions are premised. *Roviaro* involved a situation where the government's informant and the accused were the only participants in the transaction charged—"the knowing and fraudulent possession and transportation of heroin imported into the United States contrary to law." *Id.* at 63, 77 S.Ct. at 629. The informant was the person who drove the defendant to the place where the heroin was retrieved. The only person who could contradict the government's agents who were surreptitiously observing and listening to the events, save for the defendant, was the informant. Unless the defense was permitted to call the informant as a witness, the defendant would be forced to waive his right to remain silent and take the witness stand. Because the informant had such an important fund of knowledge about the most critical element of the crime charged, the court believed that the "desirability of calling [the informant] as a witness, or at

---

4. It is not clear when a trial court is *required* to hold a *Grisham*-type hearing. It would seem a *Grisham* hearing is required where such a hearing constitutes the only practical solution for a fair resolution of the issue. After all, this is an adversary process, and our circuit court "dislike[s] the necessity of ... the district court having to proceed *in camera*, and ... ex parte, on any evidentiary aspect of a criminal case." *United States v. Weir*, 575 F.2d 668, 673 (8th Cir.1978) (approving examination by the court of informant over the telephone). Moreover, there are significant potential problems associated with a *Grisham* hearing. For example, notwithstanding efforts at security, the confidential informant may inadvertently be identified when the informant comes to the place of examination. 1 W. Lafave, *Search and Seizure* § 3.3, at 80 n. 408 (1991 Pocket Part) (citing *State v. Richardson*, 204 Conn. 654, 529 A.2d 1236 (1987). Since court personnel such as

marshals, court reporters, and courtroom deputies must be present there is a potential for "leaks." *Id.* Moreover, even if the safety of the informant is not actually endangered, confidential informants may not believe that the court and its staff will act prudently and, thus, a *Grisham* hearing may itself discourage confidential informants from cooperating with law enforcement officials no matter how prudently the court acts. *Id.*

5. A "percipient" witness is normally thought to be "a witness to the underlying act or transaction which serves as a basis for the prosecution." Federal Defenders of San Diego, Inc., *Defending a Federal Criminal Case* § 6.33, at 6–38 (1990). Obviously, a participant in the act or transaction which serves as a basis for the prosecution may also be a "percipient" witness. *Id.* But a "percipient" witness need not be a participant in the act or transaction.

least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." *Id.* at 64, 77 S.Ct. at 629. It thus appears appropriate to focus upon the question of whether the informants whose identities are sought are likely to possess important knowledge about events critical to the proof of the crime charged.

Admittedly, the question of who is a "percipient" witness in a conspiracy case, particularly a drug conspiracy case, is a difficult one. This is because the very nature of a "common law" drug conspiracy case is such that the government may prove its case by showing an unlawful agreement, without necessarily showing the commission of an overt act. *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit,* Instruction 506A & Notes on Use 2, at 127–129 (West 1989 Revised Edition). Thus, in the abstract, the range of situations in a drug conspiracy case where a witness may be said to be "percipient"—that is, capable of perceiving the underlying act or transaction which serves as a basis for the prosecution—is nearly limitless.

In this case, however, one need not be overly concerned with the definition of "percipient witnesses" in the abstract since the court focused its attention and that of the parties on the nature of the illegal agreement—drug sales—when the court granted the motion for bill of particulars. In its bill of particulars the government is obligated to state, among other things, the exact dates, the exact locations, and names of the participants in the alleged offense or "overt act" (Filing 234, at 2 ¶ 2). An "overt act" is defined for purposes of the bill of particulars to mean any "overt act" pled in the indictment (including the sub-

stantive counts incorporated by reference into the conspiracy count), or, even if not pled, any specific receipt or distribution of a controlled substance or use of a weapon which was in fact in furtherance of the conspiracy (Filing 234, at 2 ¶ 2 n. 1). The government has supplied a bill of particulars setting forth the various "overt acts" (Filing 268). Thus, for practical purposes, the defendants and the court have detailed insight into how the government intends to prove its case. This detailed insight in turn permits one to practically define who is a "percipient" witness.

I believe it appropriate to define "percipient witness" in this case as one who witnessed, participated in, or was present at the commission of an "overt act." With this definition in mind, it appears to me that disclosure of the identity of the informants is not required. The government has stated, by professional representation made in open court, as if under oath, and by affidavit of the assistant United States attorney handling this case, that after due and diligent investigation none of the confidential informants "were present at, witnessed, or participated in any of the overt acts set forth in the Bill of Particulars" (Government's Exhibit 101 (06-26-91). Furthermore, the government states in one of its briefs that "[t]he government will not offer the testimony of any of the confidential informants named in any of the affidavits in support of applications for Electronic Surveillance" (Brief in Opposition to Motion to Disclose the Identity of Confidential Informants (04–29–91), at 6).[6] Therefore, I conclude that, with one possible exception, the information known by the informants is primarily "tipster" information when viewed from the perspective of the court-ordered bill of particulars, and, according-

---

**6.** I herewith order the government to comply with this representation both in its case-in-chief or in rebuttal, save only for the situation where the government discloses the identity of the informant in advance of the informant's testimony, notifies the defense of its intention to call the informant as a witness, and timely makes all other required disclosures to the defense (such as Jencks and *Brady* materials). *See United States v. Cerone,* 830 F.2d 938, 948 (8th Cir. 1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1730,

100 L.Ed.2d 194 (1988) (fact that one confidential informant actually testified at trial did not warrant reversal of conviction for district court's failure to order disclosure of informant's identity where government informed defendants that one witness was a confidential informant, government provided all necessary information prior to testimony, and defendants were permitted to, and did, conduct a thorough cross-examination).

ly, such informants are not "percipient witnesses." Disclosure is not, on balance, required. *Grisham,* 748 F.2d at 463.

As noted above, some of the informants did witness what could have been alleged as "overt acts," such as "CI–1" observing Apker pick up drug money from a distributor (Defendants' Exhibit 1 (05–23–91), at 21–23 ¶ 31) or "CI–2" observing Apker supplying drugs to the Morfords (Defendants' Exhibit 1 (05–23–91), at 37–38 ¶ 39). While it is not entirely clear, as best I can determine from the evidence, none of the incidents described in any of the applications for electronic surveillance which were witnessed by, or participated in by, a confidential informant are included as "overt acts" in the bill of particulars. Thus, since the government apparently will not use any of the incidents witnessed by or participated in by the confidential informants as evidence at trial,[7] the testimony of the confidential informants about "uncharged" events would not be "material," *Parker,* 836 F.2d at 1082 (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985)), since the

informants would not be witnesses or participants in "the offense charged." *Barnes,* 486 F.2d at 779.

As I have noted, there appears to be one confidential informant who may have information of special significance, and that informant is "CI–1," who knew that: "Apker and the Hell's Angels have a *hierarchy of distributors* in the Omaha area that are involved with them in the distribution of methamphetamine." (Defendants' Exhibit 1, at 21–23 ¶ 31) (*see also* Filing 44, Partial Transcript, in 8:CR91–00030), at 137:16–25; 138:1–18) (emphasis added). The fact that CI–1 may know about "a hierarchy of distributors" may mean that the informant has specific knowledge about who was a member of the "body of persons organized or classified according to authority, position, rank or capacity," *Black's Law Dictionary* 655 (5th Ed.1979) (defining hierarchy), and, more importantly to the defense, who was not a member.[8] If this confidential informant knows only that there were distributors who acted together with Apker, and not who constituted the

---

7. As noted earlier, a drug conspiracy (21 U.S.C. § 846) does not require proof of an "overt act," *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit,* Instruction 506A & Notes on Use 2, at 127–129. But it is necessary when granting a motion for a bill of particulars to attempt to define a drug conspiracy by reference to important events in order to satisfy the aims of Fed.R.Crim.P. 7(f), even though there is technically no requirement that the government prove an "overt act." In the instant case I required the government to set forth the particulars about important events—described as "overt acts"—in the order granting the motion for bill of particulars, including receipt or distribution of drugs, any overt act pled in the indictment, including the substantive crimes incorporated by reference into the conspiracy count, and use of a weapon in furtherance of the conspiracy. Therefore, I suppose that by a hypertechnical reading of the order granting the motions for bill of particulars a confidential informant could have witnessed or participated in an important event about which the government will adduce evidence at trial, but that event would not be required to be stated in the bill of particulars because the event was not a receipt or distribution of drugs, an overt act pled in the indictment, including substantive crimes incorporated by reference into the conspiracy count, or a use of a weapon in furtherance of the conspiracy. If any of the

events witnessed or participated in by the confidential informants will be established by the government at trial (whether or not the confidential informants will be called to testify by the government), the government is ordered to notify the court and defense counsel as soon as the government realizes the point. In that instance the court would have to reassess whether the confidential informant was a "percipient witness."

8. This distinguishes CI–1 from all other confidential informants since the remainder of the confidential informants are not represented as potentially having knowledge about who was and who was not a member of the conspiracy. (It is not even clear that CI–1 purported to know all the members of the conspiracy, but the use of word "hierarchy" suggests further inquiry would be prudent.) The fact that a confidential informant did not name a particular defendant as being a member of the conspiracy is not "material" unless the confidential informant purports to know all the members. Moreover, the fact that all the confidential informants used in the various applications failed to mention certain defendants is also not "material" because it was never contended by the government that it knew the full extent of the conspiracy at that time. After all, the purpose of the electronic interceptions was to establish the full extent of the conspiracy.

hierarchy, it is doubtful the informant's information is "material." On the other hand, if the informant knows who constituted the "hierarchy," it is likely that the informant's information is "material," particularly if certain defendants were not known to be members. Giving the defendants the benefit of the doubt, I shall examine the confidential informant designated CI–1, utilizing the *Grisham* procedure, to determine this specific question: "Does CI–1 know the names of all the members of the hierarchy of the distributors used by Gary Apker and the Hell's Angels and, if so, what are their names"?

### B. "Affiant Perjury"

In essence the defendants complain that the various affidavits for the electronic interceptions were false as they regarded the informant information or were made with reckless disregard for the truth.

Deputy Buglewicz, the state case agent who drafted the affidavit for the wiretap authorized by the state court and who dealt with the informants named therein on a personal level, was made available to testify. He was vigorously examined. Special Agent Heideman of the FBI, the federal case agent, was also available to give testimony as to his affidavit supplied in support of the federal "bug" application.

I have carefully examined the evidence presented by the defendants. The defense evidence falls far short of being "a substantial showing that false statements were intentionally or recklessly included in the government's ... affidavits" and the defendants have failed to "satisfactorily explain ... [their] failure to make such a showing." *O'Connell*, 841 F.2d at 1418 n. 6 (citing *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676–77; *Garcia*, 785 F.2d at 222, *cert. denied*, 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986)).

At the very most, the defense may have established that some of the evidence provided by confidential informants was false, but there is no persuasive evidence that any law enforcement officer knew of the

falsity, knew of the truth and misstated what the informants had told law enforcement, or acted in reckless disregard of the truth. This court should be " 'concerned, not with whether the informant lied, but with whether the affiant is truthful in his recitation of what he was told' " *McCray*, 386 U.S. at 307, 87 S.Ct. at 1060 (quoting *Burnett*, 42 N.J. at 385–88, 201 A.2d at 43–45). There is no indirect evidence which suggests that this court should question the veracity of the law enforcement officers, such as where law enforcement officials acted in an inexplicable way compared with what they reported the confidential informant to have said, or where the law enforcement officer in question has a poor reputation for veracity. 1 W. LaFave, *Search and Seizure*, § 3.3(g), at 704–05 (citations and footnotes omitted).

The defendants rely upon *United States v. Brian*, 507 F.Supp. 761 (D.R.I.1981) among other cases. *Brian* illustrates why the defendants' motions in this case should be denied. In *Brian* the court was confronted with a situation in which there were serious questions about whether an FBI agent had faked the existence of informants. The defendants had a newspaper article "in which a former FBI agent charged that a significant proportion of the bureau's informants were nonexistent and that much of the information purportedly supplied by them was fabricated." *Id.* at 765. Thus, due to the "peculiar circumstances of this case," *id.* at 766, the court took it upon itself to examine the FBI agent *in camera*. *Id.* Only if it became necessary after the examination of the FBI agent would the court examine the informant *in camera*. *Id.*

Here there is no reasonable suggestion that any of the law enforcement officers lied about the existence of the informants or made up informant information. Here the case agents were available for extensive examination by defense counsel. As a result the reasoning of *Brian* and similar cases [9] is not applicable to the case before this court.

---

**9.** *United States v. Kiser*, 716 F.2d 1268 (9th Cir. 1983), cited by the defense, is likewise not applicable.

cable. In *Kiser* the defense had obtained an affidavit from a person who was quite likely the

## III. CONCLUSION

First, with one possible exception, I conclude that the information known by the informants is primarily "tipster" information when viewed from the perspective of the court-ordered bill of particulars, and, accordingly, such informants are not "percipient witnesses." Disclosure is not, on balance, required. *Grisham*, 748 F.2d at 463.

Second, the fact that CI–1 may know about "a hierarchy of distributors" may mean that the informant has specific knowledge about who was a member of the "body of persons organized or classified according to authority, position, rank or capacity," *Black's Law Dictionary* 655 (5th Ed.1979) (defining hierarchy), and, more importantly to the defense, who was not a member. Accordingly, CI–1 will be examined by the court in accordance with *Grisham* to determine whether the informant knows who was and was not a member of the "hierarchy of distributors."

Third, the defense evidence falls far short of being "a substantial showing that false statements were intentionally or recklessly included in the government's ... affidavits" and the defendants have failed to "satisfactorily explain ... [their] failure to make such a showing." *O'Connell*, 841 F.2d at 1418 n. 6 (citing *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676; *Garcia*, 785 F.2d at 222 (8th Cir.), *cert. denied*, 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986)). Accordingly, there is no basis for ordering disclosure of the confidential informants in order to permit the defendants to make a *Franks* showing.

IT IS ORDERED that:

(1) The motions (Filings 296, 321, 329, 347, 350, 398, and 415) are, except as hereinafter provided, denied;

(2) Within sixty (60) days of the date of this memorandum and order, the government shall present the informant identified as CI–1 (Defendants' Exhibit 1, at 21–23 ¶ 31) (*See also* Filing 44, Partial Transcript, in 8:CR91–00030, at 137:16–25; 138:1–18) for *in camera ex parte* examination by the undersigned in accordance with *Grisham*, 748 F.2d at 464–65 n. 2.[10]

DATED this 15th day of July, 1991.

---

government informant, which affidavit contained information materially different from that attributed to the unnamed informant by the affiant. The court determined that the affiant officer should be subjected to an *in camera* examination by the court. Here there is no substantial showing that affiants have lied about the informant information, and the affiants have been available for extensive examination by counsel.

**10.** Within ten (10) days of the date of this memorandum and order, all parties wishing to suggest questions to be propounded to CI–1 may propose questions to the court. At the request of the government, the examination may take place outside the courthouse. Unless otherwise ordered, the government shall *not* reveal the name of the confidential informant to the undersigned, but shall present the informant to the undersigned with a case agent who will be prepared to testify that the person presented as the confidential informant is in fact CI–1. After the case agent has made the identification, the agent shall leave the hearing room and the examination of the informant will take place. The court will be happy to follow such other security precautions as are reasonable. A verbatim transcript of the proceedings shall be made, but sealed in accordance with *Grisham*.