UNITED STATES of America,
Plaintiff—Appellee,

v.

Luciano MARTINEZ–FIGUEROA,
Defendant—Appellant.

No. 03–2326.

United States Court of Appeals,
Eighth Circuit.

Submitted: Nov. 18, 2003.

Filed: April 5, 2004.

Nancy R. Price, argued, Asst. Federal Public Defender, Springfield, MO, for appellant.

Randall D. Eggert, argued, Asst. U.S. Attorney, Springfield, MO, for appellee.

Before LOKEN, Chief Judge,
McMILLIAN and BEAM, Circuit Judges.

LOKEN, Chief Judge.

Missouri state highway patrol officers stopped Luciano Martinez–Figueroa driving a tractor-trailer rig on Interstate 44 near Joplin, Missouri. A consent search of the refrigerated trailer revealed a load of cheddar cheese and 537 kilograms of marijuana. Figueroa was charged with conspiracy to distribute marijuana and possession of marijuana with the intent to distribute in violation of 21 U.S.C. §§ 841 and 846. A jury convicted him on both counts, and the district court[1] imposed a ninety-seven month sentence. Figueroa appeals, arguing that the district court abused its discretion (i) in refusing his mid-trial request to ask the Secret Service about a confidential informant's whereabouts and a later request for a missing witness instruction, and (ii) in admitting patrol officer Daniel Banasik's background testimony about Figueroa's trucking logbook. We affirm.

At trial, undercover narcotics agent James Musche described how he infiltrated the drug trafficking conspiracy by offering to store marijuana near Joplin. When the time came for a delivery, Musche met confidential informant Edward Raifsnider at a truck stop near Interstate 44. Musche testified that conspirator Jamie De La Pena was in the front passenger seat of Raifsnider's vehicle and Figueroa was in a rear seat. After a brief conversation, De La Pena told Figueroa to "go get the truck." Narcotics agents followed the truck when it left the truck stop and contacted the highway patrol officers, who stopped the truck soon thereafter.

Officer Banasik testified that he questioned Figueroa at the scene of the arrest after giving Miranda warnings. Figueroa first denied but then admitted knowing that he was hauling marijuana. Banasik used Figueroa's trucking logbook in questioning him about the circuitous route he had traveled from California, where the cheese was loaded, toward Crawfordsville, Indiana, where it was scheduled to be delivered. The logbook showed that Figueroa had lingered in California for two days and then traveled the same route through New Mexico to Texas on two consecutive days. The government also introduced evidence that there was no seal on the trailer

---

**1.** The HONORABLE RICHARD E. DORR, United States District Judge for the Western District of Missouri.

door when the truck was stopped, contrary to a bill of lading for the cheese. After the government rested, Figueroa took the stand. He admitted keeping a false log-book to evade government trucking regulations. He denied being at the truck stop or knowing either De La Pena or Raifsnider. Figueroa accused the highway patrol officers of removing the seal from his trailer, failing to advise him of his Miranda rights, and coercing a false confession.

## I. The Missing Witness Issue.

■ Two months before trial, the prosecutor sent a letter to defense counsel identifying informant Raifsnider and advising that Raifsnider was a fugitive. (The letter is not in the record on appeal.) On cross examination at trial, agent Musche testified that he had learned of Raifsnider's fugitive status from Secret Service agents but could not say when Raifsnider had become a fugitive. Defense counsel then requested "that the Secret Service be called to testify to explain why [Raifsnider] is unavailable." The court denied that request. Later, at the instructions conference, defense counsel asked the court to give a missing witness instruction.[2] The court declined to give the instruction, explaining that it had no reason to doubt Musche's testimony "that the whereabouts of Mr. Raifsnider are no longer known to the government."

■ Figueroa argues that the district court abused its discretion because the government breached its duty "to make every reasonable effort to have [an informant shown to be a material witness] made available to the defendant to inter-

view or use as a witness," quoting *United States v. Burton*, 898 F.2d 595, 598 (8th Cir.1990), which in turn relied on *United States v. Barnes*, 486 F.2d 776, 779–80 (8th Cir.1973). The government's duty to disclose the identity of an informant whose testimony may be material at trial is an exception to the "informer's privilege." *See Roviaro v. United States*, 353 U.S. 53, 58–62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). We held in *Barnes* that, if the government fails to disclose a material informant's name and address prior to trial, it "was obligated to have at least made a reasonable effort to locate him prior to trial for interview by the defendant and use as a possible witness." 486 F.2d at 780.

■ In this case, it is undisputed that, well before trial, the Assistant U.S. Attorney identified Raifsnider and advised defense counsel that he was a fugitive, in other words, that his present address was unknown. This disclosure satisfied the government's initial duty under *Barnes*. Figueroa apparently did nothing to locate Raifsnider before trial and certainly did not bring the issue of his whereabouts to the court's attention until the cross examination of Musche near the end of the government's case. Then, defense counsel asked the court to order an unidentified Secret Service witness to testify regarding Raifsnider's whereabouts, making no showing that such a witness was available and could provide even marginally relevant testimony. The court did not abuse its discretion in denying that untimely request. *See United States v. Oates*, 173 F.3d 651, 658–59 (8th Cir.), *cert. denied*, 528 U.S. 890, 120 S.Ct. 213, 145 L.Ed.2d 179 (1999). Nor did the court abuse its

**2.** The requested instruction provided in relevant part: "If it is peculiarly within the power of either the government or the defense to produce a witness who could give relevant testimony on an issue in the case, failure to call that witness may give rise to an inference

that this testimony would have been unfavorable to that party." *See United States v. Anders*, 602 F.2d 823, 825 (8th Cir.1979); Model Criminal Jury Instructions for the Eighth Circuit § 4.16.

discretion in later refusing to give a missing witness instruction. The government had presented evidence that Raifsnider's whereabouts were unknown, and Figueroa had presented no evidence to the contrary. A missing witness instruction "is not warranted if the defense does not adequately show that the government possesses the sole power to produce the witness." *United States v. Johnson*, 562 F.2d 515, 517 (8th Cir.1977).

## II. The Logbook Testimony.

■ At trial, Officer Banasik testified that, after questioning Figueroa about the course of his travels, "I went up to the tractor unit to obtain the bill of lading [and] his logbook ... to see if I could determine if there were any discrepancies in what he told me and what the paperwork stated." After identifying a government exhibit as the logbook he used, Banasik was asked, "What is the purpose of a logbook?" The court overruled Figueroa's timely objection, and Banasik responded:

> The logbook has several purposes. One, truckdrivers are regulated by law how long they can drive, how long they have to sleep. They're very regulated on how much they can drive and stuff. The logbook basically records their activities so if they are stopped by law enforcement purposes, the law enforcement officer can go back and ensure that they are not in violation of federal or state law, overdriving and stuff.

> Companies use it also to verify that their drivers picked up a load, and sometimes it verifies how many miles they have driven, how many loads they have taken. Then it also verifies their trip. If they have a bill of lading that says they're from somewhere and they get stopped and it verifies—the logbook should show that they had stopped there to pick up a load and stuff.

On appeal, Figueroa argues that the district court abused its discretion by permitting Officer Banasik to testify as an expert witness when the government had not given the notice required by Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure.

■ Rule 701 of the Federal Rules of Evidence limits opinion testimony by lay witnesses "to those opinions or inferences which are ... (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702," which deals with the admissibility of testimony by expert witnesses. This limitation is designed to prevent a party from using lay opinion testimony to "subvert[ ] the disclosure and discovery requirements of Federal Rules of Criminal Procedure 26 and 16 and the reliability requirements for expert testimony." *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir.2001). In general, unless a law enforcement officer is qualified as an expert, opinion testimony "is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *Peoples*, 250 F.3d at 641.

In this case, Officer Banasik had first-hand knowledge based upon his use of the logbook to interrogate Figueroa after his arrest. The above-quoted testimony was in the nature of foundation to explain to the jury why Banasik was able by reason of his training and experience as a highway patrol officer to use the logbook to verify or refute Figueroa's description of his travels. The explanation required a knowledge of trucking regulations that an untrained layman might lack. But it was not particularly technical. Indeed, a prior witness, patrol officer Mory McKnight, had given testimony that reflected knowl-

edge of how truckers keep logbooks without objection, and Figueroa gave later testimony regarding the regulatory purposes of his logbook that was consistent with Officer Banasik's explanation. In these circumstances, the district court did not abuse its Rule 701 discretion by permitting Banasik to offer this lay opinion testimony. In any event, the challenged testimony was cumulative, and thus any error was harmless. *See United States v. Ortega,* 150 F.3d 937, 944 (8th Cir.1998), *cert. denied,* 525 U.S. 1087, 119 S.Ct. 837, 142 L.Ed.2d 693 (1999).

The judgment of the district court is affirmed.